**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Philip J. FAIRCHILD,**
**Defendant–Appellant.**

No. 90–2637.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1991.
Decided Aug. 15, 1991.

Jeffrey Anderson, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Stephen J. Eisenberg, Madison, Wis., for defendant-appellant.

Before POSNER, FLAUM and MANION, Circuit Judges.

MANION, Circuit Judge.

Philip J. Fairchild was indicted on one count of conspiring to manufacture or distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), and two counts of possessing phenylacetone with intent to manufacture a controlled substance, in violation of 21 U.S.C. § 841(a)(1). Fairchild filed three motions to suppress evidence recovered during the execution of three search warrants; the magistrate's recommendation, which was adopted by the district court, was to partially grant one of the motions and deny the other two. Fairchild then pleaded guilty to count one and agreed to assist the government's investigation of the methamphetamine conspiracy, reserving his right to challenge the district court's denial of the motions to suppress. In exchange, the government agreed to drop counts two and three, to recommend a two-point reduction for acceptance of responsibility, and to move for a downward departure pursuant to sentencing guidelines § 5K1.1 if Fairchild provided substantial assistance. The government also agreed to not seek a two-point increase for Fairchild's managerial role in the offense.

At the sentencing hearing, the government did not move for a downward departure because it concluded that Fairchild's

assistance was not substantial. The government did drop counts two and three, and did recommend a two-point reduction for acceptance of responsibility, as required by the agreement. The district court rejected Fairchild's motion to withdraw his guilty plea, holding that the government did not violate the plea agreement. The district court also added a two-point increase in the offense level under guidelines § 3B1.1 for Fairchild's managerial role, and in the alternative found that the two-point increase was justified under § 3B1.3 by Fairchild's use of a special skill to commit the offense. Fairchild was given a criminal history category of I and an offense level of 34. He was sentenced to 188 months imprisonment, the maximum sentence within the guidelines range. Fairchild appeals his sentence, the district court's denial of his motion to withdraw his guilty plea, and its denial of his motions to suppress. We affirm.

## I.

Fairchild's indictment was based on evidence seized pursuant to three search warrants and one warrantless search.

The first search warrant was issued by a Texas judge to search a San Antonio apartment and a sports car in the apartment's parking lot. The warrant authorized a search for methamphetamine, a controlled substance, and the arrest of persons controlling the premises or possessing the substance. The search turned up one-and-a-half pounds of methamphetamine in several plastic baggies, and Fairchild was arrested upon his return to the apartment.

The warrant was based on the affidavit of Detective Jack Wright of the San Antonio Police Department. The affidavit specifically identified the apartment and automobile to be searched for methamphetamine. Wright affirmed that he received this information ·

from a credible and reliable person who has on previous occasions given affiant information regarding the trafficking in controlled substances that has proven to be true and correct, but whose identity cannot be revealed for security reasons,

[and] that the above said credible and reliable person did within the past thirty-six hours see a controlled substance, to wit: methamphetamine unlawfully possessed by the aforesaid Philip Fairchild at the above described premises ...

The second warrant was issued the next day by a Texas county judge to search a Coachman motorhome described by appearance, license plate, serial number and location. The warrant was executed that day, and the search yielded two pounds and 14 ounces of methamphetamine.

The warrant was based on the affidavit of Holly Cheatham, a task force investigator with the San Antonio office of the Drug Enforcement Administration. Cheatham's affidavit stated that she learned Fairchild was a distributor of methamphetamine while engaged in undercover negotiations. Cheatham relied on a "credible and reliable source," who informed her that Fairchild owned the motorhome, and that "he/she had seen a large quantity approx. 4–5 ounces of methamphetamine" in the motorhome within the past 36 hours.

The third warrant was issued approximately seven months later by a Wisconsin circuit court judge to search a mini-warehouse in Eau Claire, Wisconsin for methamphetamine, other controlled substances and various drug paraphernalia. This warrant was based on the affidavit of agent John Staber of the Wisconsin Division of Criminal Investigation, who learned of the investigation and arrest of Fairchild in San Antonio from Texas authorities. Staber was told by Detective Wright of an informant's tip that Fairchild, who was free on bail and had moved to Wisconsin, had rented a mini-warehouse where he stored chemicals for a methamphetamine lab. The mini-warehouse was rented by a "Philip J. Bowers," and the listed mailing address was a postal box rented to Fairchild. The phone number on the lease was that of Gregory K. Bowers, Fairchild's brother-in-law. Detective Wright told Staber that Bowers sold the methamphetamine produced by Fairchild. Wright also told Staber that Fairchild took enough chemicals to Wisconsin to produce methamphetamine

for five years, and that his modus operandi was to store the chemicals in rented mini-warehouses. Staber's affidavit gave other information in support of the warrant: a three-fold increase in use of electricity at the Bowers' residence (manufacturing methamphetamine requires extensive use of electric power); suspicious periods of late-night activity at the Bowers' residence; and signs of wealth beyond their apparent means.

The storehouse had been discovered earlier that month in response to a reported break-in at the mini-warehouse; the responding officer smelled chemicals and called the fire department. The ensuing warrantless investigation by the fire department turned up drug paraphernalia and chemicals used in manufacturing methamphetamine. This information was known to Staber and used to support his application for the warrant.

## II.

### A.  Denial of Motions to Suppress

The magistrate's conclusions on the motions to suppress, which were adopted by the district court, were contained in a thorough 34–page report and recommendation. After examining the briefs, the record, and relevant caselaw, we agree with the magistrate's conclusions and find no reversible error. Nevertheless, we will briefly discuss each of Fairchild's contentions.

1.  The first warrant: the apartment search.

The magistrate found that this warrant was not supported by probable cause because it lacked a sufficient nexus between the items to be seized and the place to be searched, but concluded that the officer's good faith reliance on the warrant was objectively reasonable and recommended denial of the motion to suppress with respect to the apartment. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). The magistrate recommended granting the motion to suppress evidence obtained pursuant to the automobile search.

■  Fairchild attacks two aspects of the warrant's validity, arguing that there was no basis for the judge to evaluate the informant's credibility, and attacking the nexus between the items to be seized and the place to be searched. The magistrate correctly rejected the first contention, noting that the judge who issued the warrant in the landmark case of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), had less information about the informant in that case than the Texas judge had here. Detective Wright's assertion that he had personal knowledge of the informant's veracity, combined with the informant's personal observation of the methamphetamine in Fairchild's possession, were sufficient to support the Texas judge's conclusion that the informant's tip was credible.

The magistrate ruled that the warrant failed the sufficient nexus test because: 1) it was silent as to the basis for Detective Wright's conclusion that Fairchild controlled the apartment; and 2) the description of the methamphetamine lacked detail and context to support an inference that its presence in the apartment would be ongoing, and that the drugs would still be there 36 hours later.

■  We assume without deciding that the magistrate was correct that this warrant failed to establish probable cause; even given that, the good faith exception applies. Fairchild argues that the affidavit was so lacking in indicia of probable cause that official belief in its existence was entirely unreasonable. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420. We disagree. This is a difficult standard; Fairchild must show that a reasonable officer would have known that the warrant did not support probable cause. *United States v. Brown*, 832 F.2d 991, 994 (7th Cir.1987) (although there was no substantial basis for upholding probable cause determination, there were sufficient indicia of probable cause to apply good faith exception). The affidavit states that Fairchild was seen in possession of the methamphetamine on the premises within the past 36 hours, thus linking Fairchild to the contraband and the location. There is no evidence that the officers knew

anything that would contradict the affidavit's assertion that Fairchild was in control of the premises. Further, the officers' belief that the drugs would still be there is objectively reasonable; nothing indicates that the officers had reason to believe the drugs had been removed. And as the magistrate pointed out, the use of 36 hours (also used in the motorhome warrant) may have been a method of shielding the identity of the informant. The methamphetamine may have been seen in Fairchild's possession much closer to the time the warrant was issued. The officers' good faith reliance on the validity of the warrant was not unreasonable, and the district court correctly denied the motion to suppress.

2. The second warrant: the motorhome search.

■ This warrant is less problematic. Fairchild challenges only the reliability of the informant. The *Gates* case provided a liberalized "totality of the circumstances" test for determining probable cause. Although the affidavit's assertion that the informant is "credible and reliable" is insufficient by itself to establish probable cause, the totality of the circumstances do support issuance of the warrant. The informant was not anonymous, as in *Gates;* the informant spoke from firsthand observation, providing very specific and detailed information; and the target was a drug dealer for whom a search warrant had already been executed, resulting in Fairchild's arrest and the seizure of methamphetamine the previous day. All of this supports the issuing judge's probable cause determination.

3. The third warrant: the mini-warehouse search.

The magistrate found that Fairchild lacked standing to contest the search of the mini-warehouse because no personal Fourth Amendment right was implicated. The district court agreed with that conclusion, but in the alternative noted that "the issue is of minimal importance, given the sufficiency of the affidavit he seeks to challenge." And indeed, the affidavit supporting the search of the mini-warehouse

"overflows with detail." (Magistrate's report at 28.) We have reviewed the affidavit, and we see no reason to detail its contents. Suffice it to say that the affidavit easily supports probable cause for issuing the warrant, and we generally agree with the magistrate's discussion of the issue. (See magistrate's report at 31–34.)

## B. Two–Point Manager Enhancement

Fairchild argues that the two-point increase pursuant to § 3B1.1 of the guidelines for Fairchild's role in managing his brother-in-law Bowers was not justified because the two were equally culpable, and were seen by the government as co-conspirators in a joint venture. The presentence report recommended the increase, which the district court approved. In the alternative, the district court thought Fairchild deserved a two-point increase for using a special skill to commit an offense pursuant to § 3B1.3:

[I] am convinced that Mr. Fairchild had a managerial role in relation to Mr. Bowers. The difference in their age, the indications that Mr. Fairchild directed what Mr. Bowers was to do, told him to get out and get selling and essentially controlled and directed his activities make him a manager. The family relationship adds to that, but I am prepared to find in the alternative that Mr. Fairchild used a special skill to produce the methamphetamines that are at issue here and I think there's a solid basis for a two-level enhancement, whether it's based on Mr. Fairchild's role in the offense or Mr. Fairchild's special skills.

■ We agree that either basis supports the two-level increase. We review the district court's findings only for clear error. *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989). The record shows that Fairchild founded a chemical company in Houston and used it to obtain the needed chemicals. He directed Bowers in buying chemicals, making batches of drugs, moving vehicles used in committing the offense, and selling the drugs. Further, Fairchild's age (47) relative to Bowers (26)

and their family relationship also support the district court's finding.

■ We also think the district court's finding that Fairchild used a special skill to commit the offense was not clearly erroneous. Comment 2 to § 3B1.3 states that " 'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education ... Examples would include ... chemists...." While Fairchild was not a chemist, the record shows he had a degree in biology and formerly worked as the chief lab technician for the department of surgery at a Texas hospital. He used his knowledge of chemistry to purchase chemicals for his company, and put them together in the "right combination," as he admitted at the plea hearing, to make methamphetamine.

### C. Withdrawal of the Guilty Plea

■ We have established that, absent a § 5K1.1 motion by the government, district courts lack jurisdiction to depart downward for a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense...." Section 5K1.1. *See United States v. Donatiu,* 922 F.2d 1331 (7th Cir.1991); *United States v. Lewis,* 896 F.2d 246 (7th Cir.1990). However, the government must keep its end of the bargain in plea agreements where it promises to make the motion. *United States v. Coleman,* 895 F.2d 501 (8th Cir.1990); *Donatiu,* 922 F.2d at 1334, n. 2. In this case the government made no motion. Fairchild contends this violated the plea agreement, and that he should have been allowed to withdraw his guilty plea. The language of the plea agreement itself proves otherwise:

> If the defendant provides substantial assistance in compliance with § 5K1.1 of the United States Sentencing Commission Guidelines, and 18 U.S.C. § 3553(e), the government agrees to recommend a downward departure from the guidelines range which will be determined by the court and below the mandatory minimum.

■ Unfortunately for Fairchild, this portion of the agreement gets him absolutely nothing. "[S]ubstantial assistance in compliance with § 5K1.1" of the guidelines means that it is still the government that has the discretion to determine whether assistance is substantial. Here, the parties have a typical dispute—Fairchild says he told the government everything he knew in a good faith effort to assist, and the government says it didn't learn anything new because Bowers already gave them the same information. Fairchild thinks this qualifies as substantial assistance; the government disagrees. Nothing a defendant does, up to and including a "good faith" effort to assist the government, guarantees him a substantial assistance departure. The government still must make the motion, so a defendant's assertion of "good faith" is irrelevant. Nothing in the plea agreement here gives away the government's discretion on whether to make the motion; given that, the district court was correct to deny Fairchild's motion to withdraw the plea.

■ We emphasize, however, that we think the government should be more forthcoming with defendants during plea agreement negotiations. The government should make clear its requirements for making the substantial assistance departure motion. Here the government says it requires "actual assistance" (i.e., new and relevant information) in order to make the motion; in *Donatiu* it said the assistance must actually lead to the prosecution of another defendant. 922 F.2d at 1335. We have heard of other § 5K1.1 policies in other U.S. Attorneys' offices. Whatever the basis for the government's § 5K1.1 decisions, that basis should be communicated to defendants before a plea is entered, preferably as a written part of the plea agreement. The government should not take advantage of a defendant's ignorance of the caselaw on substantial assistance to mislead him into believing it will make the motion if he cooperates, when "good faith" cooperation, at least as the defendant perceives it, often is not enough.

### D. Maximum Sentence

The district court sentenced Fairchild at the very top of the guidelines range. Fairchild alleges that the court failed to state with particularity its reasons for imposing a sentence at the top of the range, in violation of 18 U.S.C. § 3553(c)(1). However, the district court did state its reasons:

> [t]he defendant is committed to the custody of the Bureau of Prisons for a term of 188 months, to be followed by a three-year supervised release. I am going to the top of the guidelines because of the defendant's age, his role in the offense and, most important, for the length of time that his criminal conduct lasted.

Taken together, these reasons are sufficient to support the district court's decision. Fairchild is correct that age is not usually relevant in determining the type of sentence when the guidelines provide sentencing options (guidelines § 5H1.1), and that his managerial role was already taken into account by the two-level enhancement under § 3B1.1. But the district court was entitled to consider that Fairchild's age allowed him to use a younger family member and involve him in the conspiracy, and reflected the district court's conclusion that Fairchild should have known better. Fairchild does not challenge the district court's final basis for imposing a sentence at the top of the range—the length of time his criminal conduct lasted—nor can he. That basis is sufficient in itself to support the sentence. Fairchild had already been arrested and indicted in Texas when he moved to Wisconsin and started all over again in the same illegal business, bringing with him a five years' supply of chemicals. The sentence at the top of the range was within the district court's discretion.

AFFIRMED.