**UNITED STATES of America, Plaintiff,**

v.

**Darryl B. McNEAL, Defendant.**

**No. IP 99–131–CR–01 T/F.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 19, 2000.

Barry Glickman, Assistant United States Attorney, Indianapolis, IN, William Marsh, Federal Community Defender, Indianapolis, Indiana.

## ENTRY GRANTING DEFENDANT'S MOTION TO SUPPRESS

TINDER, District Judge.

Defendant, Darryl B. McNeal, moves to suppress all evidence obtained directly or indirectly by the Government as a result of an October 11, 1999, search of 7150 N. Lakeside Drive which was conducted pursuant to a search warrant. He contends that the affidavit submitted in support of the warrant failed to establish probable cause and that the good-faith exception to the exclusionary rule is inapplicable. The motion was fully briefed, and on January 4, 2000, the court heard oral argument. The Defendant's suppression motion is **GRANTED** for the reasons indicated in the following analysis.

## I. BACKGROUND

On October 11, 1999, Michael Forrest, a Detective on the Indianapolis Police Department, presented the following affidavit to the Honorable Clarence D. Bolden, a judge of the Marion County, Indiana Superior Court. Judge Bolden approved the affidavit by issuing a corresponding search warrant for the residence located at 7150 N. Lakeside Drive in Indianapolis. The probable cause affidavit reads as follows:

Detective Michael Forrest, Police Officer, **SWEARS OR AFFIRMS THAT HE BELIEVES AND HAS GOOD CAUSE TO BELIEVE** that proceeds, moneys, documents, papers, letters, ledgers and paraphernalia of illegal drug trafficking are being kept and stored at 7150 N. Lakeside Dr., Indianapolis, Marion County, Indiana and said residence is under the control of Darryl McNeal B/M.

This affiant bases his belief on the following information: that on October 7, 1999 a confidential informant contacted a B/M by the name of the Darryl McNeal aka Red and asked to purchase 2 and ¼ ounces of cocaine. McNeal agreed to this and stated that he would send his friend, Bud, to deliver the co-

caine. Bud's real name is Gregory Mansfield B/M. McNeal stated that he would call Mansfield and that Mansfield would contact the CI. A short time later Mansfield contacted the CI and arranged to deliver the cocaine to the CI. Mansfield delivered a large amount of cocaine to the CI a short time later. The suspected cocaine tested positive with a weight of 64.2055 grams. A short time later the CI again contacted McNeal and asked to purchase another package of cocaine. McNeal stated that he would again send Mansfield to deliver the package. Mansfield called the CI back and a short time later delivered a package which later tested positive for cocaine with a weight of 64.1511 grams. The CI stated to me that all cocaine deals are supervised by McNeal and he then directs his workers when and where to deliver the cocaine. Based upon my training and 8 and ½ years experience as a Narcotics detective it is quite common for records and proceeds to be kept at one location while the actual narcotics are being kept at a different location in an attempt to conceal the illegal activity as well as keeping the proceeds and records separate from the narcotics in case of a police investigation.

Based upon the above information, I am requesting a search warrant be issued for the residence located at 7150 N. Lakeside Dr., Indianapolis, Marion County, Indiana. Said residence is described as a one story single family dwelling that has a brown exterior. Said residence consists of a living room, dining room area, kitchen, bedroom(s) and bathroom(s). I request this search to include all rooms, closets, drawers, shelves and personal effects contained therein and thereon. I request this search to include all moneys, papers, records, documents, videos/photos, computer information or any other documentation which indicates or tends to indicate a violation or a conspiracy to violate the Indiana Controlled Substance Act. I further request this search to include the person of Darryl McNeal B/M.

X *[signed by Det. Forrest]*

Subscribed and sworn to before me, this 11th day of October 1999

*[signed by Judge Bolden]*

Judge, Marion County Superior Court 15

Shortly after the issuance of the search warrant, law enforcement officers executed it and, upon entering 7150 N. Lakeside Drive, found an abundance of evidence which the prosecution hopes to offer into evidence during the trial of this case. That evidence includes an observation of Darryl McNeal inside the residence, cooking powder cocaine into "crack" cocaine; 1 and ¼ kilograms of powder cocaine; ¼ kilogram of "crack" cocaine and two loaded weapons (which are significant both because of their location in the room where the cocaine was being cooked into "crack" and because of McNeal's alleged status as a convicted felon); and approximately $133,000 in United States currency.

McNeal moves to suppress all of the evidence seized during the execution of the warrant and all evidence subsequently derived from or obtained as a result of the seized evidence. He contends that the affidavit lacks probable cause to justify the issuance of the search warrant. He further contends that the "good faith" exception to the exclusionary rule should not apply because a reasonably well-trained police officer would have known from reading the affidavit that it did not present probable cause to Judge Bolden.

The Government argues in response that McNeal has not shown that he has standing to challenge the search, that the search warrant was supported by probable cause and, that if not, the officers executing the warrant acted with objectively reasonable reliance on the warrant's validity.

## II. STANDING

Turning first to the threshold standing issue, the Government contends

that McNeal has produced no factual basis upon which the court can conclude that McNeal enjoyed a legitimate expectation of privacy in the residence search. In its brief, the Government argues: "Significantly, defendant never provides sworn testimony acknowledging that he was living there at the time of the search, nor does he come forward with any sworn testimony of any kind that he had any kind of expectation of privacy in the residence." (Govt.'s Resp. in Opp'n to Def.'s Mot. to Suppress and Points and Authorities in Support Thereof ("Govt.'s Resp.") at 4.) The Government correctly notes that a defendant cannot just rely on the government's theory of the case, and here, its theory is clearly that McNeal controlled the Lakeside Drive residence, based on the statement in the search warrant that he controlled the residence and the discovery of him there cooking "crack" during the search. As explained in *United States v. Meyer*, 157 F.3d 1067, 1079–80 (7th Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999), and *United States v. Ruth*, 65 F.3d 599, 604 (7th Cir.1995), a defendant must demonstrate from evidence that his/her own reasonable expectation of privacy was intruded upon to successfully mount a Fourth Amendment suppression challenge.

 But the Government inexplicably overlooks Exhibit "A" attached to McNeal's suppression motion.[1] It purports to be an affidavit from McNeal (but would be more correctly identified as an unsworn declaration pursuant to 28 U.S.C. § 1746) which states that "on October 11, 1999, 7150 N. Lakeside Dr., Indianapolis, Marion County, Indiana was his residence and that he lived there with his girlfriend and his daughter." Certainly one has a legitimate expectation of privacy in one's residence, the place in which he lives. *See, e.g.*, *United States v. Paige*, 136 F.3d 1012, 1018–19 (5th Cir.1998). Exhibit A appears to be in substantially the same form as required by § 1746. True enough, it is not

in the identical form as set forth in the statute, but it is plenty close enough. It has all of the critical elements: an acknowledgment of the penalties of perjury and a statement that the information in the declaration is true. It is very short, but it provides enough information that if false in any material respect, McNeal would be subject to a perjury prosecution. As for the information contained in it, it is enough to justify a claim of an expectation of privacy by McNeal in the residence. The Government's challenge to McNeal's standing is not well taken and is **OVERRULED.**

### III. PROBABLE CAUSE

Having decided that McNeal has standing to challenge the search, the next question is whether his contention that the affidavit lacks probable cause is well taken. McNeal and the Government essentially agree on the standard by which the affidavit is to be reviewed. They come out very differently on the result of the application of that standard, however.

 A magistrate's decision to issue a search warrant should be upheld so long as the magistrate had a "substantial basis for … conclud[ing] that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quotation omitted, alteration in *Gates*); *see also United States v. Spry*, 190 F.3d 829, 835 (7th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 967, 145 L.Ed.2d 838 (2000); *United States v. Lloyd*, 71 F.3d 1256, 1262 (7th Cir.1995), *cert. denied*, 517 U.S. 1250, 116 S.Ct. 2511, 135 L.Ed.2d 200 (1996); *United States v. Malin*, 908 F.2d 163, 165 (7th Cir.1990). A magistrate's probable cause determination is entitled to deference:

> [A] magistrate's determination of probable cause is to be 'given considerable weight and should be overruled only when the supporting affidavit, read as a

1. During oral argument, counsel for the Government explained that Exhibit A was not mentioned in the Government's response brief

because he believed that Exhibit A was insufficient to constitute an affidavit.

whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.'

*Spry,* 190 F.3d at 835 (quoting *United States v. Pritchard,* 745 F.2d 1112, 1120 (7th Cir.1984) (quoting *United States v. Rambis,* 686 F.2d 620, 622 (7th Cir.1982))). The reviewing court should consider all the facts presented to the magistrate rather than focusing on isolated aspects of the probable cause showing. *See Lloyd,* 71 F.3d at 1262–63. Because there is a strong preference for searches conducted pursuant to a warrant, *Gates,* 462 U.S. at 236, 103 S.Ct. 2317, "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common-sense, manner." *Id.* (quotation omitted, alterations in original). Doubtful cases are to be resolved in favor of upholding the search warrant. *See United States v. Ventresca,* 380 U.S. 102, 106, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Rambis,* 686 F.2d at 622.

▮▮▮▮▮ Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found...." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *see also Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317; *United States v. Navarro,* 90 F.3d 1245, 1251 (7th Cir.1996). The Supreme Court in *Gates* announced a totality of the circumstances approach to determining whether probable cause to search exists. *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. The magistrate's task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* "An affidavit must provide the magistrate with a substantial basis for determining the existence of

probable cause...." *Id.* at 239, 103 S.Ct. 2317.

▮▮▮▮ In making this probable cause determination, "a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *United States v. Singleton,* 125 F.3d 1097, 1102 (7th Cir.1997), *cert. denied sub nom. Cox v. United States,* 522 U.S. 1098, 118 S.Ct. 898, 139 L.Ed.2d 883 (1998); *United States v. Reddrick,* 90 F.3d 1276, 1281 (7th Cir.1996). In addition, a magistrate is " 'entitled to take into account' the experiences of trained officers whose affidavits explain the significance of specific types of information." *United States v. Lamon,* 930 F.2d 1183, 1189 (7th Cir.1991) (finding a substantial basis for probable cause determination based in part on a detective's experience that drug dealers often hide money, drugs, and other incriminating evidence at their permanent residences); *see also United States v. Batchelder,* 824 F.2d 563, 564 (7th Cir.1987) (stating that magistrate was entitled to take into account agent's experience indicating that individuals who purchased silencers tended to keep them in their residences and for extended periods of time); *United States v. Rambis,* 686 F.2d 620, 624 (7th Cir.1982) (stating that magistrate could reasonably rely on the facts in the affidavit of experienced FBI agent). The magistrate, however, cannot simply ratify the bare conclusions of another. *See Gates,* 462 U.S. at 239, 103 S.Ct. 2317; *Aguilar v. Texas,* 378 U.S. 108, 113–14, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

## A. MCNEAL'S CHALLENGE TO THE SEARCH WARRANT

Defendant McNeal challenges the search warrant issued in this case on the ground that the affidavit submitted to support its issuance lacked probable cause in that it did not present the judge with facts and circumstances demonstrating a fair probability that contraband or evidence of drug crimes would be found at the resi-

dence.[2] The Defendant posits that the affidavit sought authorization to search the residence on the basis of three premises: first, that McNeal controlled the 7150 N. Lakeside Drive residence; second, that McNeal had recently been involved in drug trafficking activity; and, third, that in the drug detective's opinion, drug traffickers often keep their drugs separate from the drug proceeds and records or other documents related to the transactions. The Defendant argues that as to the first two premises, insufficient evidence was presented to Judge Bolden to allow him to reach those conclusions. As to the third, the Defendant argues that the drug detective's opinion on those practices, even if properly received by the judge, is irrelevant.

## B. CONTROL OF 7150 N. LAKESIDE DRIVE

■ As for the matter of the control of the residence, the Defendant is correct that the affidavit presents only Detective Forrest's conclusion that McNeal controls it. There is no underlying information to explain how Detective Forrest arrived at that conclusion. There is no evidence of observations of McNeal at that location, either by Detective Forrest or the confidential informant (hereinafter "CI") or anyone else, for that matter. There is no evidence of property ownership or rental records. There is no information about telephone or utility listings. There is no information about either Detective Forrest or the CI (or anyone else) being told by anyone that McNeal was connected to the residence in any way. Interestingly, the affidavit does make reference to two direct contacts that the CI had with McNeal on October 7, 1999. However, neither contact is described as having taken place at the Lakeside residence, either in person or by

telephone or beeper or any other device connected in any way with the residence. So all Judge Bolden had was Detective Forrest's conclusion that McNeal controlled the residence.[3]

## C. MCNEAL'S INVOLVEMENT IN DRUG TRANSACTIONS

■ Information contained in the affidavit connects McNeal to two drug transactions on October 7, 1999. But the source of the information is a mystery. The totality of the evidence of McNeal's involvement is Detective Forrest's averment that the CI contacted McNeal twice on that date, each time requesting to purchase cocaine and each time followed by the delivery of cocaine. The affidavit indicates that the deliveries were handled by another individual (Mansfield), purportedly stated by McNeal to be his friend, Bud. This is supplemented by the CI's statement to Detective Forrest that McNeal supervises all cocaine deals and directs his workers when and where to deliver the cocaine.

■ This court's concern' with the skeletal nature of this information begins with the unknown source of it. Detective Forrest identifies the CI as the person who explains the way in which the McNeal organization functioned, but he told Judge Bolden nothing about the CI or how the CI would have been privy to that information. That is important because for Judge Bolden to be able to rely on the CI's description of how the organization worked, he would have to know why Detective Forrest would rely on the CI's word about such things. Often, a prior history of dealing with a CI can document his/her reliability. In other situations, other things about the CI or the circumstances under which the information is given can provide that reliability.[4] Here,

2. The Defendant does not appear to be challenging the scope of the warrant or the manner of its execution.

3. The generic description of the house in 'the affidavit ("a one story single family dwelling that has a brown exterior. Said residence consists of a living room, dining room area, kitchen, bedroom(s) and bathroom(s).") sug-

gests that someone, perhaps even Detective Forrest viewed the exterior of the residence but that no one associated with the affidavit had seen the interior.

4. The reliability and veracity of information obtained from an informant sufficient to support a probable cause finding may be demon-

there is neither. The affidavit reports that the CI participated in two drug transactions with the McNeal organization on October 7th. Ordinarily, that would be very helpful information to have in an affidavit—it would certainly give the CI an experiential basis upon which to describe how McNeal operates.

Perhaps the most favorable construction of the information about the transactions and the McNeal organization to support the issuance of the warrant would be if it could be read to imply that the CI first described the functional structure of the McNeal organization to Detective Forrest and then subsequently corroborated his description by effectuating the October 7th deals—both of which came off just as the CI predicted. Such a sequence of events would document the CI's credibility. But here, there is no way to know how (or when) Detective Forrest learned about the CI's participation in those October 7th transactions. If he observed the deals— either the initiation with McNeal or the delivery by Mansfield, or both, that would corroborate that the transactions actually happened. If he monitored them, as in controlled buys, that would corroborate not only that they happened, but also that they occurred just as the CI described.[5] But if the transactions were merely related to him as historical events by the CI, that leaves the accuracy and credibility in

the telling of those events entirely in the hands of the CI, about whose reliability nothing whatsoever is known, at least insofar as the affidavit is concerned.[6] Absent some factual underpinning in the affidavit, the judge's intuition about the sequence and manner of occurrence of the events is *more than a reasonable inference would allow.* Rather, such a construction of this affidavit could only be done if the judge assumes the existence of unsupplied, but necessary facts.

Of course, the judge reviewing the affidavit should use common sense and can rely on his/her own experience and judgment. *See, e.g., Lloyd,* 71 F.3d at 1263. But that is not to say that the judge can speculate about whether a reliable person with a first hand basis of knowledge of the transactions reported them. He/she also cannot merely rely on prior experience with Detective Forrest and his past practices of only including drug transactions that he personally observed in search warrant affidavits, or only using reliable informants as a basis for his requests for warrants. Otherwise, it would not matter what is put in an affidavit, rather, it would be more important who is seeking it, and that is not the appropriate standard. Without some basis of evaluating the reliability of the information in the affidavit, the judge is issuing the warrant only on

strated by: "(1) personal observation by the informant; (2) the degree of detail given; (3) independent police corroboration of the informant's information; and (4) the informant's testifying at the probable cause hearing." *Singleton,* 125 F.3d at 1103–04; *see also Lloyd,* 71 F.3d at 1263.

5. The Government asserts in its brief that the affidavit can be fairly read: "to specify a reasonable period of time within which Detective Forrest **conducted** purchases of **crack** cocaine from McNeal and his co-conspirator...." (Govt.'s Resp. at 7) (emphasis added). During oral argument, however, counsel for the Government indicated that "the CI" should be substituted for Detective Forrest's name in that sentence. The minor flaw in the assertion is that "crack," as opposed to some other form of cocaine was involved. One could infer that from the affidavit, but it is

equally or more probable that another form of cocaine was involved. Just as Detective Forrest likely knew things—true facts—that he didn't include in his affidavit, in his zeal to avoid suppression of the evidence, Government counsel makes assertions which the court presumes are true but are neither found in the affidavit nor the result of singular inferences that must be drawn from the facts in the affidavit. In the end, it does not matter whether the cocaine referred to in the affidavit was crack or some other form. The form of the cocaine would not have contributed to a basis for determining that probable cause existed.

6. Information provided to the police by a criminal participant after-the-fact, as a general rule, ought to be considered less reliable than information that the police can monitor or observe as it is occurring.

his/her confidence in the person swearing to the affidavit. And that leaves far too much to chance that the transactions as described by the CI ever occurred. Unless the reviewing judge can know why Detective Forrest had reason to rely on what he stated about the transactions, the judge was acting on faith alone, and not facts.

As the affidavit in this case is drafted, the information about the October 7th transactions could have come from a variety of sources: a CI (with an identity known to Detective Forrest and a past record of reliability or not) who claimed[7] to have participated in them and told Detective Forrest about them; Detective Forrest who observed and/or monitored them; or, a CI who did not disclose his/her identity to Detective Forrest (i.e. an anonymous tipster) who either participated in the transactions or who made up the information about the transactions that he/she related to Detective Forrest.[8] It would be reasonable for Judge Bolden to have relied upon some of those sources as a basis of probable cause (such as a known, reliable CI or Detective Forrest's first hand observations). It might even have been reasonable for Judge Bolden to rely on information relayed to Detective Forrest by a CI without a prior record of reliability if the CI disclosed his/her identity to Detective Forrest. If that were the case, the CI would have been making statements against his/her penal interests in disclosing his/her participation in drug deals. But it

would not be reasonable for Judge Bolden to have relied on an anonymous tipster who may have actually participated in the drug deals, or who may have made up the story of the deals. The danger of fabrication of information of this nature, either by the tipster or by a corrupt law enforcement[9] official makes it inherently unreliable. Unfortunately, there is nothing in the affidavit or the circumstances of its presentment to him which could have guided Judge Bolden to know from which of the possible sources it sprang. It is obvious that he presumed that it came from a reliable source or he would not have issued the warrant, but there is nothing in the affidavit which would have assured him that it did not come from one of the unreliable ones.

The Government might point to the other details in the affidavit as bolstering its reliability. For example, the affidavit discloses that the substances obtained in the transactions tested positive for cocaine and gives the weights measured out to four decimal places. This sounds rather impressive, as if it is something that a careful Detective would do when monitoring a "controlled buy," which, during oral argument, is what the Government suggested happened. Unfortunately, the affidavit doesn't disclose, not even implicitly, who did the testing and weighing. It could have been done by careful law enforcement officers. It could have been done by the CI under the watchful eyes of Detective Forrest. Or it could have been done by the identified or anonymous CI and later reported to Detective Forrest.[10] Or it

---

7. For purposes of this analysis, it doesn't matter whether a known, reliable CI was truthful in providing Detective Forrest information. It is not necessarily unreasonable to rely on information from such a CI even if the information is false. It is the past record of reliability which justifies the reliance on the present information.

8. The court presumes that the CI referred to in the affidavit as participating in the transactions is the same person that Detective Forrest says told him about the supervision of drug deals by McNeal. He/she is first referred to in the affidavit as "a confidential informant" and is subsequently referred to as "the CI."

9. The court is not suggesting that Detective Forrest fabricated any information in this or any other case. By all accounts, he is a rock solid police officer and his reputation for truth and veracity is untarnished. Nonetheless, because of what this affidavit lacks, it is the potential for misuse of such a vacuous form of affidavit by an officer of inferior integrity which makes it unreliable.

10. As the Government proves in case after case, participants in drug transactions can be very sophisticated, owning specialized testing and weighing equipment with a nearly unique use in the illegal drug business.

could have been fictionalized by the known or unknown informant. All of these possibilities are equally plausible given the absence of explanatory information in the affidavit. Such testing and weighing by law enforcement officials or a known and reliable informant would provide some substantial basis for reliance. Such claimed testing by an unknown informant or an informant of unknown reliability would add nothing. Because the affidavit gave Judge Bolden no reason to eliminate the sources of the testing and weighing which had not been shown to be reliable, this information added nothing of substance to the affidavit. Certainly, Judge Bolden was permitted to draw reasonable inferences to construe facts contained in the affidavit in a manner favoring a determination of probable cause. However, he was not permitted to presume missing facts or links which would enable him to draw necessary inferences.

### D. DETECTIVE FORREST'S OPINION

As for the third premise, Detective Forrest's expertise on the separation and concealment of records and proceeds of drug transactions, the Defendant does not appear to challenge Judge Bolden's consideration of such an opinion. A judge's authority to do so is well supported by case law. *See, e.g., United States v. Hall,* 142 F.3d 988, 995 (7th Cir.1998) (holding probable cause existed for search warrants of defendant's home where affidavit included an expert opinion that pornographers tend to maintain their collections at home); *United States v. Gil,* 58 F.3d 1414, 1418 (7th Cir.1995) (court entitled to rely on training and experience of police officers in interpreting seemingly innocent conduct); *Lamon,* 930 F.2d at 1189–90; *Batchelder,* 824 F.2d at 564; *Rambis,* 686 F.2d at 624. *But see United States v. Gomez,* 652 F.Supp. 461 (E.D.N.Y.1987) (holding no probable cause for search of apartment when there was no connection between illegal activities and defendant's residence other than agent's expert opinion that narcotic traffickers often keep records in their residences).

However, even with Detective Forrest's stated expertise and his opinion regarding drug dealers' propensity for separation of drugs, proceeds and incriminating papers, that information does little, if anything, to link the Lakeside Drive address to evidence of drug trafficking. True enough, a careful drug dealer will keep money and indicia of drug dealing separate from the drugs themselves. This concept comports with common sense. But in this case, why at the Lakeside Drive address? Detective Forrest's opinion does not go so far as to suggest that a drug dealer is more likely to use a residential type structure for concealing such drug related matters than a non-residential structure. Even if the affidavit contained enough information from which it strainingly could be inferred that the Lakeside Drive address was McNeal's residence (which perhaps could be done if Detective Forrest's conclusional statements that it is a residence and that it is under McNeal's control were properly received by Judge Bolden), it does not suggest that a drug dealer is more likely to keep drug related information at his/her residence than at some other location. Detective Forrest opined that records and proceeds of drug transactions commonly are kept at one location while the actual drugs are kept at a different location. Perhaps he could have opined that a drug dealer is more apt to keep the records and proceeds (as opposed to the drugs themselves) at his/her residence, but he did not. *Cf. Lamon,* 930 F.2d at 1190 (detective's opinion that drug dealers often hide money, drugs, and other incriminating evidence at their permanent residences provided substantial basis for probable cause to search defendant's permanent residence). In the absence of such an opinion, there is no basis for concluding that the things Detective Forrest sought would more likely be kept at the Lakeside Drive residence rather than at some other location.

Perhaps it may be understood by a judge's common sense that a drug dealer, like any other criminal, might use his/her home as a storage place for illegal proceeds and contraband separate from the drugs themselves. A fatal flaw in this concept, though, is that nothing in the affidavit places McNeal (or anyone else connected with the drug activity, for that matter) at (or even near) 7150 N. Lakeside Drive before, during or after the drug transactions. The affidavit merely attributes control of the property to McNeal, not presence at the location. Even with the stretching of the inference from the control of a residence to being the actual residence of the person in control, that says nothing about whether the person in question (or his/her operatives) was (or were) at the residence at a time sufficiently fresh to drug activity to demonstrate a fair probability that drug contraband would be found there. Of course, drug activity is of an ongoing nature, and as noted below, the relevant time period to avoid staleness of information can be relatively long. Nonetheless, there is no information at all in the affidavit that places McNeal or any of his operatives at the Lakeside Drive residence at any time.[11]

Even accepting Detective Forrest's characterization that McNeal controlled the residence in question, control is not synonymous with presence. It takes no imagination to understand that one can control a property, even a residence, without ever being present there.[12] Not even Detective Forrest's opinion about drug dealers' propensities about separating drug related proceeds and information from the drugs points in the direction of 7150 N. Lakeside Drive.

### E. THE AFFIDAVIT LACKS PROBABLE CAUSE

■ And in the end, all that Judge Bolden had before him were the three premises mentioned above: unattributable information about two drug transactions and a pattern of doing such business by McNeal from a source about whom nothing is known; a determination (with an undisclosed basis) by Detective Forrest that McNeal controlled a particular residential structure; and an experientially based opinion by Detective Forrest that drug dealers, such as McNeal, often keep drug proceeds, records and related material separate from the drugs. Even with those three things before him, even starting with a presumption of the validity of the warrant and giving great deference to Judge Bolden's probable cause determination, even allowing for Judge Bolden's exercise of practical common sense consideration of the matter, Judge Bolden did not have near enough information before him to conclude that there was a fair probability that the things Detective Forest wanted to search for would be at 7150 N. Lakeside Drive.

The Seventh Circuit's decision of *United States v. Brown,* 832 F.2d 991 (7th Cir. 1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 243 (1988), is instructive because the affidavit in support of the warrant in that case is quite similar to

11. Perhaps a judge can infer that a person who resides at a location always returns to that location within some reasonable period of time. Given the flexibility of the concept of "residence," *see State Election Bd. v. Bayh,* 521 N.E.2d 1313, 1317 (Ind.1988), that may not be such a reasonable inference. But even if that is a reasonable inference, the presence of McNeal (or an operative) at the Lakeside address must relate in some way to the timing of drug activity. To say that it is reasonable to infer that a person is present at his or her residence from time-to-time says nothing about whether that presence is likely to have occurred within a time frame close enough to

the drug activity to make it fairly probable that drug-related evidence could be found there. At bottom, a bald conclusion that the residence is McNeal's adds nothing to the totality of the circumstances.

12. Perhaps the more properties (residences or otherwise) one controls, the less likely it is that he/she has ever been present at them. And the converse may be true, too, that is, the fewer properties owned, perhaps the more likely it is that one has visited it or them. Regardless, the affidavit says nothing about whether this is the only property, or one of just a few, controlled by McNeal.

Detective Forrest's affidavit. The affidavit stated that the affiant had personal knowledge that Brown leased apartment # 709 at 1201 Westminster Row and that partial bank records relating to a scheme to defraud had been found during a search at another location. The affiant opined, based on knowledge learned during his investigation, that other records relating to the scheme were kept at the Westminster Row apartment. The defendant moved to suppress the evidence seized at the apartment, arguing that the affidavit did not establish probable cause to search. *Id.* at 993. The district court held that there was no substantial basis for concluding there was probable cause to search the apartment. *Id.* at 994. The Seventh Circuit agreed, reasoning that the affidavit failed to indicate "how the police knew that the Westminster Apartment was truly one of [the defendant's] addresses." *Id.* The court also found "a paucity of information suggesting that a search of the Westminster address ·would uncover evidence of wrongdoing." *Id.* The court noted that if the "affidavit had shown that this address was truly [the defendant's] and had been one of his mail-drops, there of course would have been probable cause." *Id.*

As in *Brown,* Detective Forrest's affidavit does not provide any factual basis for his belief that 7150 N. Lakeside Drive was under McNeal's control. All the affidavit provides is Detective Forrest's bare conclusion which, as in *Brown,* is insufficient to establish probable cause to search the residence. In fact, Detective Forrest's affidavit provides even less information than was provided in *Brown.* The affidavit in *Brown* at least indicated the defendant "leased" the apartment, which is more specific information than that given by Detective Forrest—that McNeal "controlled" the residence. McNeal could have "controlled" the residence in any number of different ways, and Detective Forrest's affidavit does not hint at the manner in which McNeal may have controlled it. Moreover, as in *Brown,* there is a paucity of information suggesting that a search of the Lakeside Drive residence would uncov-er evidence of any wrongdoing. As stated, nothing in the affidavit places McNeal, any of his operatives or any drug deals at the Lakeside Drive residence at any time.

The court has considered the Seventh Circuit line of cases which stands for the proposition that evidence of drug dealing is likely kept where the drug dealers live. *See, e.g., Singleton,* 125 F.3d at 1102; *Lamon,* 930 F.2d at 1188; *United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986). In these cases the warrant affidavit contained a factual basis for finding that the defendant lived at the residence to be searched. *See Singleton,* 125 F.3d at 1102–03 (drug dealer indicated that defendant had said not to hand over drugs in front of his home; money was handed over on porch of home but drugs were handed over down the block); *Lamon,* 930 F.2d at 1190 (defendant told police that first residence was not his permanent residence; police recovered identification that listed defendant's address as the second residence searched; and confidential informant shown to be reliable reported that defendant lived at the second residence); *Angulo–Lopez,* 791 F.2d at 1396 (citizen-informants indicated that defendant was selling drugs from his residence at 4669 Fuhrer Street and police investigation of utility records indicated that occupant at that address was the defendant). The affidavit in this case, however, contains insufficient information to establish a fair probability that McNeal actually lived at the residence at 7150 N. Lakeside Drive. Any inference that McNeal lived at the Lakeside Drive address is based solely on Detective Forrest's conclusory opinion that the residence was under McNeal's control. The affidavit lacks any factual basis for this conclusion. There is no indication that utility bills or records of property ownership were relied upon, that a vehicle registered to McNeal was seen parked outside the residence, that anyone reported McNeal lived at the residence, or even that McNeal was seen coming and going from the house.

In addition, the affidavit contains little to establish that the address was a residence, other than Detective Forrest's conclusion that it was and his description of the building—but the affidavit does not indicate how Detective Forrest knew the configuration of the building, whether he had observed it and thus had personal knowledge of it, or whether someone else (maybe the CI) described it to him. So, Judge Bolden had nothing other than Detective Forrest's conclusion that this was a residence. Lastly, to obtain the benefit of the cases which recognize that evidence of drug deals are likely kept where the drug dealer lives, one would have to equate "control" of a residence with "living" there, but the two terms have separate meanings. Thus, even accepting that evidence of drug dealing is likely kept where the drug dealers live, there was not a substantial basis to establish a fair probability that McNeal actually lived at the residence at 7150 N. Lakeside Drive.

Even if Detective Forrest's conclusory opinion that the residence was under McNeal's control is a sufficient basis for finding that McNeal lived at 7150 N. Lakeside Drive, the affidavit still lacked a substantial basis for finding probable cause to search. The affidavit simply fails to provide any nexus between evidence of McNeal's alleged criminal drug activity and the Lakeside Drive location. Without that nexus, there is no basis for determining that there is a fair probability that evidence of McNeal's drug activity would be found at the residence.

Case law requires a reasonable nexus between the evidence sought and the location to be searched. In *United States v. Singleton*, the court rejected the defendants' challenge to the existence of probable cause to search their residence. 125 F.3d at 1102. The probable cause affidavit provided the following facts: police conducted surveillance of the residence and two controlled buys. In the first, money was handed over on the home's porch, but drugs were handed over down the block. The informant explained that the defendant did not want drugs handed over in front of his home. In the second buy, the informant met with the defendants at their residence, they told the informant to have another person contact them for crack, he did so, and within 5 minutes one defendant was observed leaving the residence and meeting with that other person who then sold crack to the informant. *Id.* at 1102–03. Given these facts in the affidavit, the court held that the magistrate who issued the warrant reasonably could have inferred that the defendants had a crack supply in their residence. *Id.* at 1103.

Similarly, in *United States v. Sleet*, 54 F.3d 303, 306–07 (7th Cir.1995), the court held that the warrant authorizing the search of the defendant bank robber's apartment was supported by probable cause. The defendant had argued there was an insufficient nexus between the robbery of a First Indiana Bank and his apartment. The probable cause affidavit indicated that the defendant had been arrested and charged with another bank robbery, which had been accomplished in a manner similar to the First Indiana robbery. In addition, the second robbery occurred less than half a mile from the defendant's apartment, and witnesses observed the robber fleeing in the direction of the apartment. The affidavit also indicated that the officers confirmed through the landlord that the defendant lived in the apartment and after his arrest, the defendant admitted he lived there. *Id.* at 306–07. The court concluded that this circumstantial evidence linked the First Indiana robbery with the defendant's apartment, thus providing probable cause to search for fruits and instrumentalities of the robbery at that location. *Id.* at 306.

The Seventh Circuit found probable cause to search a drug dealer's part-time and permanent residences and automobile in *United States v. Lamon*, 930 F.2d 1183 (7th Cir.1991). The affidavit was based on information from a confidential informant that the defendant Lamon recently sold drugs out of his part-time residence, La-

mon still had more than an ounce left after that sale, and Lamon sold drugs from an automobile parked in front of the residence and had done so recently. The court determined that this evidence "suggested a pattern of ongoing criminal activity" involving both the part-time residence and automobile. *Id.* at 1188–89. The affidavit also indicated that the informant was reliable: He had participated in a controlled buy and provided information which led to the issuance of another search warrant and the indictment of two individuals on drug charges. In addition, the police found "considerable evidence" linking the defendant to illegal drug dealing. *Id.* at 1188–90. On the basis of this information, the court concluded that the affidavit established probable cause to search the defendant's part-time residence and automobile. *Id.* at 1188. The court also found probable cause to search Lamon's permanent residence even though the informant indicated that the defendant sold drugs only from his part-time residence. *Id.* at 1190. Probable cause was established by the "considerable" and specific evidence linking Lamon to illegal drug dealing as well as a detective's opinion that drug dealers keep evidence of their illegal activities at their permanent residences. *Id.*

In addition, the Seventh Circuit found that probable cause supported the search warrant of the defendant's residence in the case of *United States v. Angulo–Lopez,* 791 F.2d 1394 (9th Cir.1986). The warrant was based on a detailed affidavit which reported information obtained from police surveillance and a number of confidential informants who were shown to be reliable. *Id.* at 1395–96. Included was information from citizen-informants that the defendant was selling drugs from his residence at 4669 Fuhrer Street, and police investigation of utility records indicated that the defendant occupied the residence at that address. *Id.* Thus, the affidavit contained reliable information not only that the de-

fendant sold drugs, but also sold drugs from his home—the place to be searched.

Detective Forrest's affidavit lacks information like that in *Singleton, Sleet, Lamon* and *Angulo–Lopez* which provided the necessary link between the evidence sought and the place to be searched. There is no evidence that any drug deals took place in the vicinity of the Lakeside Drive residence as in *Singleton.* In contrast with *Singleton, Sleet* and *Lamon,* the affidavit contains no indication that McNeal (or his operatives) was (or were) ever observed by the CI, Detective Forrest or anyone, at, coming from or going to (or toward) the Lakeside address either just before or after a drug deal or, for that matter, at any time. Nor does the affidavit indicate that Detective Forrest confirmed through utility records or some other means that McNeal actually lived at the Lakeside residence, as in *Sleet.* Furthermore, the source of information connecting McNeal to illegal drug activity has not been shown to be reliable as in *Sleet, Lamon* and *Angulo–Lopez.*[13] And significantly, there is not even a suggestion in the affidavit that McNeal bought or sold illegal drugs on the premises of the Lakeside Drive address, thus distinguishing *Lamon* and *Angulo–Lopez.*

Detective Forrest's affidavit is more like the affidavit challenged in *United States v. Dickerson,* 975 F.2d 1245 (7th Cir.1992). In that case, the Seventh Circuit held that the affidavit established probable cause to search the defendant's vehicle but found it unlikely that it provided probable cause to search the defendant's residence. The affidavit stated that a witness saw the defendant bank robber run from the bank to a vehicle and indicated that the vehicle was registered to the defendant at a particular address. The only fact in the affidavit linking the vehicle used in the robbery to the defendant's residence was the vehicle's registration, which the court found insufficient to support probable cause to search

---

**13.** This fact also distinguishes the affidavit for the search of the motor home in *United States v. Fairchild,* 940 F.2d 261, 265 (7th Cir.1991), in which the court held there was probable cause to search based on the reliability of the informant.

the residence. *Id.* at 1250. Thus, probable cause was found lacking because of an insufficient nexus between the evidence sought and the place to be searched.

Detective Forrest's affidavit provides an even weaker nexus between evidence of criminal activity and the location to be searched. The *Dickerson* affidavit included the vehicle's registration, which was a link, though insufficient link, between the vehicle and the residence. Here, however, there is absolutely no evidence linking McNeal's alleged drug activity with the Lakeside Drive residence. Thus, based on *Dickerson,* Detective Forrest's affidavit failed to establish a reasonable nexus between McNeal's alleged criminal drug activity and 7150 N. Lakeside Drive.

 It appears that Judge Bolden was relying on information that was undoubtedly in Detective Forrest's mind but which never made it to the papers presented to the court. But "an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate." *Aguilar v. Texas,* 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (reviewing court may not consider information not provided to the magistrate in the probable cause affidavit), *overruled in part on other grounds, Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Consequently, the court concludes that under the totality of the circumstances, the warrant issued for the search of 7150 N. Lakeside Drive did not reflect a fair probability that contraband would be found there.

The Government has said very little in response to the Defendant's criticism of the factual support for Judge Bolden's issuance of the warrant, other than to recite general legal propositions about the deference to be given to a judicially issued warrant and the generous construction in support of the warrant that should be given to the language in the probable cause affidavit. The Government at oral argument also asserted that Judge Bolden drew reasonable inferences, but failed to specify what those inferences were or the bases for them. There is nothing wrong about the legal propositions cited by the Government, and they have been taken into account in reaching this result. It would have been helpful, though, to have had the benefit of the Government's analysis of the factual basis of this particular affidavit rather than a general compilation of principles of construction.[14] Nonetheless, neither what the Government has argued nor the other points discussed above that the court has considered are enough to salvage the probable cause affidavit in this case. The minute drabs of information in the affidavit before Judge Bolden were not enough to amount to a totality of circumstances leading to a fair probability that contraband would be found at 7150 N. Lakeside Drive.[15]

14. A court would have reason to be concerned with "boilerplate" language in an affidavit submitted in support of a search warrant. Similarly, a court is justifiably unimpressed when a prosecutor uses "boilerplate" language in defending against a motion to suppress. For example, in arguing that McNeal does not have standing to challenge the search at issue here, counsel for the Government writes: "he does not have standing to object to the search of the **vehicle** ..." (Govt.'s Resp. at 4) (emphasis added). That assertion may have fit the case from which it was borrowed, but it doesn't fit here.

15. This court intends no disrespect to the Honorable Clarence D. Bolden. Judge Bolden recently retired from a long and justifiably distinguished career as a jurist in Marion County because he reached the mandatory age for retirement of Indiana judges. In addition to receiving a wealth of much earned praise for his service, Judge Bolden was bestowed the high honor by the Indiana Supreme Court of being recalled to service as a "senior" judge to assist the greatly overburdened judges of Marion County. But judges are human, and not even the best judge can serve for decades without an occasional error. In this case, Detective Forrest's insufficient affidavit just escaped Judge Bolden's usually careful scrutiny. If it is any consolation to Judge Bolden, the undersigned will confess to having been involved in the prosecution of the *Brown* case and the trial judge in the *Dicker-*

■■■■ The Defendant also challenges the October 7th drug transaction information contained in the affidavit as stale, that is, it was approximately four days old as of the time the warrant was requested. Given the court's view on the absence of probable cause, this contention does not need to be reached.[16]

## IV. GOOD FAITH EXCEPTION

■■■■ This leads to the last straw to be grasped by the Government in an effort to avoid suppression of the damning evidence found at 7150 N. Lakeside Drive, the "good faith" reliance on the warrant's validity, an exception to the warrant requirement of the Fourth Amendment recognized in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under the good faith doctrine, "evidence recovered during the execution of a facially-valid search warrant that is later invalidated by the courts is not always subject to suppression." *United States v. Sleet*, 54 F.3d 303, 307 (7th Cir.1995). The good faith doctrine does not apply if: (1) the magistrate issuing the warrant abandoned his detached and neutral role; (2) the officers were dishonest or reckless in preparing the affidavit for probable cause; (3)

the affidavit is "so lacking in indicia of probable cause" that an officer's belief in its existence is entirely unreasonable; or (4) the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923–26, 104 S.Ct. 3405.[17] McNeal maintains only that the affidavit was so lacking in indicia of probable cause that reliance on it was objectively unreasonable.

■■■ The Government maintains in essence that the officers executing the warrant reasonably relied on its validity merely because Judge Bolden had issued the warrant. The Government is correct that ordinarily, the existence of a warrant is sufficient to establish good faith in conducting the search. *See Leon*, 468 U.S. at 921, 104 S.Ct. 3405 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination"). But in extraordinary cases, the affidavit supporting a search warrant is so lacking in indicia of probable cause that no reasonable officer could rely in good faith on the magistrate's issuance of the warrant. This is just such an extraordinary case.

son case, discussed above, in which the affidavits were found to be deficient by the Seventh Circuit Court of Appeals.

**16.** The age of the information contained in the affidavit for a warrant is one factor that a judge should consider in determining whether probable cause supports a belief that the evidence being sought will be found in the place to be searched. *See, e.g., Batchelder*, 824 F.2d at 564. If the information supporting a warrant is too old, it is considered stale and probable cause does not exist. A warrant properly can be issued if other factors indicate that the information is reliable and that the object of the search will still be on the premises. *See id.* Given the nature of the drug activity alleged and the items sought, if the affidavit had contained probable cause, Judge Bolden could have reasonably concluded that the drug activity was sufficiently near the time of the request for the warrant that the information was not stale. When an offense is continuous in nature, the passage of time between the occurrence on which the warrant is based and the execution of the search is less significant. *See United States v.*

*Pless*, 982 F.2d 1118, 1126 (7th Cir.1992) (drug conspiracy; information 3 months old not stale). One commentator teaches that the "continuity of offense is the single most important factor in the determination of whether probable cause is valid or stale...." 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.7(a), at 346 (West Publishing Co., 3d ed. 1996 & Supp. 1998). Thus, if this court had occasion to reach the staleness question, it is likely that the Defendant's argument about that would have been rejected.

**17.** The court must consider the objective reasonableness "not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." *Leon*, 468 U.S. at 923 n. 24, 104 S.Ct. 3405. The record before the court, however, does not indicate whether Detective Forrest participated in the execution of the search warrant.

On numerous occasions, the Seventh Circuit has upheld search warrants under the good faith doctrine and, as the analysis which follows shows, none of those cases would support the conclusion that the officers had a reasonable and good faith belief that there was probable cause to issue the search warrant in this case.[18] In *United States v. Spry*, 190 F.3d 829 (7th Cir.1999), the defendant argued that the officers unreasonably relied on a warrant to search her residence because the warrant affidavit failed to demonstrate the reliability of the confidential informant who provided details of the defendant's drug activities. *Id.* at 834. The court held that the police officers relied on the search warrant in good faith, concluding that the affidavit supplied "a variety of reliable information from several different sources." *Id.* The affidavit included an informant's report that a third party planned to buy drugs for the informant from someone living in Superior, Wisconsin. The police set up surveillance of the third party and followed her to the defendant's home where she remained for 45 minutes. After leaving, the third party gave drugs to the informant who gave them to the police. The informant indicated the third party said she bought the drugs from "Sue" at the home (the defendant's first name is Susan) and that Sue said she had more drugs available to sell. The affidavit also stated that a criminal history check revealed the defendant had been arrested for drug offenses previously, and another informant indicated that the defendant was involved in drug dealing. *Id.* The court concluded "[t]his evidence gave the police an objectively reasonable belief that probable cause existed." *Id.* In contrast, Detective Forrest's affidavit does not indicate that any of the information therein came from a variety of different or reliable sources, and there is no indication that the police corroborated any of the information obtained from the CI. More importantly, Detective Forrest's affidavit does not contain any facts linking McNeal and/or drug activity to the residence at 7150 N. Lakeside Drive.

In *United States v. Adames*, 56 F.3d 737 (7th Cir.1995), officers executed a warrant of arrest in rem issued pursuant to an *ex parte* proceeding and seized the defendant's business. During the seizure they found information that was used in an affidavit to obtain a warrant to search the business property. At the time of the search, most courts allowed *ex parte* seizures of business property, but the Supreme Court subsequently held that *ex parte* seizures of real property are unconstitutional. *Id.* at 747. The Seventh Circuit held that based on the state of the law, the officers could have reasonably believed that an *ex parte* proceeding was sufficient to seize real property and, therefore, they could have in good faith believed that the search warrant, based on information from the *ex parte* seizure, was valid. *Id.* at 747–48. *Adames* clearly is distinguishable. There is no claim in the instant case that a change in the applicable law invalidated what had been a valid search warrant.

In *United States v. Dickerson*, 975 F.2d 1245 (7th Cir.1992), though the affidavit did not establish probable cause to search the defendant's residence, the Seventh Circuit held the officers had a reasonable and good faith belief that the warrant was supported by probable cause. The officers had information that linked the defendant and a bank robbery to the defendant's residence—the defendant's car was parked

---

**18.** In many other good faith cases, the Seventh Circuit first held that probable cause to search existed and then determined that even if there was no probable cause, the officers had good faith reliance on the existence of probable cause. *See United States v. Butler*, 71 F.3d 243, 250 n. 4 (7th Cir.1995); *Sleet*, 54 F.3d at 307; *Pless*, 982 F.2d at 1126; *United States v. Chapman*, 954 F.2d 1352, 1373 (7th Cir.1992); *Lamon*, 930 F.2d at 1189–90; *United States v. Malin*, 908 F.2d 163, 166–67 (7th Cir.1990). It should be obvious that if the information in the affidavit is sufficient to establish probable cause, that same information necessarily would be enough to support an officer's reasonable good faith belief in the existence of probable cause.

at the house, had been identified by a witness to the robbery and had a hot engine. *Id.* at 1250. This information was not in the affidavit presented to the judge, but the officers did not know this information was not included as they had not seen the probable cause affidavit. *Id.* Thus, the officers had reason to believe that the information linking the defendant and criminal activity to the residence was included in the affidavit supporting probable cause. *Dickerson* does not support application of the good faith doctrine in the instant case. It is not asserted that the officers executing the search warrant at the Lakeside address had reason to believe that some information (which would link McNeal and criminal activity to the residence) was included in Detective Forrest's affidavit though it was not.

*United States v. Skinner,* 972 F.2d 171 (7th Cir.1992), does not support the conclusion that the officers searching Lakeside Drive relied on the warrant in good faith either. In that case, law enforcement received an anonymous letter describing in detail a drug organization in the area, including the roles of the individuals involved and an organizational flow chart. Based on the letter, law enforcement conducted an investigation and corroborated some of the information in the letter, including the mailing of packages from Peoria, Illinois to Tucson, Arizona and the prior criminal activity of two individuals identified as members of the drug organization. This information was provided in the warrant affidavit. *Id.* at 172, 175–76. The Seventh Circuit held that given the affiant's extensive experience in law enforcement and the detailed nature and number of facts in the anonymous letter which the police investigation corroborated, the officers had a reasonable and good faith belief that the warrant was supported by probable cause. *Id.* at 176. Here, the affidavit for probable cause does not provide numerous and detailed facts about an alleged drug organization. Nor does it indicate that Detective Forrest or any other law enforcement officers conducted an

investigation and corroborated information obtained from the confidential informant.

It could be argued that *United States v. Fairchild,* 940 F.2d 261 (7th Cir.1991), and *United States v. Brown,* 832 F.2d 991 (7th Cir.1987), would support the conclusion that the officers acted in good faith reliance on the warrant in the instant case. Upon carefully considering these cases, however, the court concludes they do not. The *Fairchild* defendant challenged the nexus between the items to be seized and the location searched, which was his apartment. As with Detective Forrest's affidavit, the affidavit in *Fairchild* contained a conclusory opinion that the defendant controlled the place to be searched. *Fairchild,* 940 F.2d at 264. But the conclusory opinion in *Fairchild* was not the only basis for the officers' good faith reliance on probable cause. The affidavit stated that the defendant also was seen by a reliable informant in possession of illegal drugs on the premises, "thus linking [the defendant] to the contraband and the location." *Id.* And, there was no indication the officers would believe the drugs had been removed from the premises. *Id.* at 264–65. Thus, the conclusory opinion aside, the officers could reasonably believe that there was a connection among the defendant, the contraband and the location to be searched. No such information linking McNeal to illegal drug activity and the Lakeside Drive residence is contained in Detective Forrest's affidavit. There is no indication that McNeal (or his operatives) was (or were) seen on the premises in possession of illegal drugs, proceeds or records or even seen on or near the premises at all. Without such information connecting the drug activity, McNeal and 7150 N. Lakeside, no reasonable officer could rely in good faith on the existence of probable cause in this affidavit.

The decision in *Brown,* in which the court concluded that the police officers reasonably relied on the warrant, is more troubling. *Brown,* 832 F.2d at 995–96. The probable cause affidavit stated that

the defendant leased the apartment to be searched but provided no factual basis for the conclusion that the apartment was the defendant's. *Id.* at 993–94. The affidavit indicated that during a search of another apartment of the defendant, partial records relating to a scheme to defraud were located. The affiant stated his opinion, based on knowledge gained from his investigation, that other records relating to the scheme would be found at the defendant's apartment. *Id.* at 993, 995. The affidavit is conclusory, but the affiant's opinions were not wholly lacking in any basis. First, the affidavit indicated that the opinion about the location of the records was based on knowledge the detective gained through his investigation. Second, the indication that "partial records" were found at the other location strongly suggested the existence of other records. Furthermore, in determining that the good faith exception applied, the court considered that the affidavit incorporated a prior, exhaustive search warrant affidavit that had been used to obtain a search warrant for a different location. *Id.* at 995.

Detective Forrest's conclusory opinion that the residence was under McNeal's control is not even inferentially supported in the affidavit by knowledge gained during an investigation into McNeal's activities. The affidavit neither states that his opinion is based on the detective's personal knowledge nor that the detective conducted any investigation. In addition, the affidavit does not suggest that any partial drug-related records had been found, so there is no reasonable inference that the remainder of the records exists. Of course, in stark contrast with the *Brown* case, Detective Forrest's affidavit does not incorporate any other warrant affidavit or other information upon which a probable cause finding could be based. Thus, Detective Forrest's affidavit is more deficient than the conclusory affidavit upon which the officers reasonably and in good faith relied in *Brown*.

The court concludes that given the deficiencies in the affidavit, a reasonably well-trained officer would have known that the search was illegal despite Judge Bolden's authorization. Therefore, the good faith doctrine is inapplicable to the facts of this case and the evidence seized during the search of 7150 N. Lakeside Drive should be suppressed. *See Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405.

The court has analyzed the warrant at length with the hope that it could be found to support a probable cause determination. That effort to support the presumption of the validity of a judicially issued warrant should not be mistaken for an overly technical critique of the document. Rather, this court attempted to leave no stone unturned in an effort to find a fair probability for finding drug-related evidence hidden in the interstices of the brief wording of the document. Regrettably, it could not. The reasonably well-trained officers executing this warrant are certainly not expected to analyze the document at such length or in such depth. They only need to give it a glancing look. But even such a superficial review would have clearly shown no reason for reliance on the CI's information, no drug related activity at or near the location to be searched, and nothing but a conclusional link of McNeal to that location. In no reasonable officer's book would that be considered probable cause.

## V. CONCLUSION

Detective Forrest's affidavit did not provide a substantial basis for the conclusion that probable cause existed to search for the items he wanted to search for at 7150 N. Lakeside Drive. Moreover, the affidavit is so lacking in indicia of probable cause that no reasonable police officer could rely in good faith on the warrant despite Judge Bolden's authorization. Therefore, the evidence directly seized during the October 11, 1999, search of 7150 N. Lakeside Drive should be suppressed, namely: (1) observations of McNeal converting cocaine powder into crack cocaine; (2) approximately 1 ¼ kilograms of cocaine hydrochloride; (3) approximately ¼ kilogram of crack cocaine;

(4) 2 loaded weapons: a Glock .45 caliber semi-automatic pistol and a Ruger .44 Magnum revolver; and (5) $133,000.00. Defendant McNeal's motion to suppress is **GRANTED.**

The Defendant's motion seeks suppression of evidence indirectly obtained from the search. When asked at oral argument, defense counsel did not specify what evidence the Defendant maintains was obtained indirectly from the search of the Lakeside address. Understandably, it is unlikely that the attorney for the Defendant can know the particulars of what may constitute the fruit of this poisonous tree, especially given the paucity of discovery that ordinarily is available in federal criminal cases. Thus, today's ruling suppresses only that evidence directly seized during the search. However, to insure that the Defendant will have the opportunity to challenge any evidence derived from the search of 7150 N. Lakeside Drive, the court will **ORDER** that the Government provide additional discovery to Defendant McNeal **no later than February 1, 2000.**

The following items (in addition to the matters already provided pursuant to the court's November 8, 1999 disclosure order) shall be provided to counsel for the Defendant:

1. A list of all documents and other exhibits to be offered into evidence by the Government at trial, including a description of the date the item was first received by the Indianapolis Police Department, the Drug Enforcement Administration, any multi-agency drug task force, the United States Attorney's Office, or any person, agent or officer (including confidential informants and cooperating individuals) of those agencies or any other federal, state, local or private agency or entity that assisted or aided the investigation of this matter, the name of the person first receiving it, and a copy of all such documents and exhibits;

2. Copies of all documents and photographs of all other objects seized from 7150 N. Lakeside Drive;

3. Copies of all documents and photographs of all objects that came into the possession of the above agencies or persons, officers, or agents in connection with this matter **after** the search of 7150 N. Lakeside Drive began;

4. The names of all witnesses the Government intends to call as witnesses during its case-in-chief at this trial;

5. Copies of all statements made by the witnesses referred to above and all persons interviewed by law enforcement personnel during or in connection with the search of 7150 N. Lakeside Drive, including, but not limited to, all grand jury testimony, tape recordings **and** reports of interviews and summaries of interviews of such persons (including agent's, police officer's and/or attorney's notes of interviews);

6. The names of all persons affiliated with law enforcement or other safety personnel who participated in the search of 7150 N. Lakeside Drive and all persons who were present at or near 7150 N. Lakeside Drive during or after the search (in connection with search-related activities) and copies of all documents, videotapes, still photographs, papers, memoranda and records of radio or telephone transmissions made or created to reflect the activities that took place during the search or in connection with the activities resulting from or arising out of the search; and

7. If not otherwise covered by the above, all records, documents or other information that in the best judgment of counsel for the Government were directly or indirectly learned of by the Government or its agents, officers, witnesses and/or other sources of information (as described in item #1 above) in assistance of this prosecution as a result of the search of 7150 N. Lakeside Drive.

Because of the exceptional circumstances presented here, the court will consider allowing the attorney for the Defendant to depose any of the persons identified in response to item 6 of the

order above. If any such depositions are requested, a motion seeking the same should be made pursuant to Rule 15 of the Federal Rules of Criminal Procedure.

Following review of the additional items to be disclosed, the Defendant may seek additional disclosure and/or supplement his motion to suppress, if necessary.